UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALFRED SMITH,

       Plaintiff,

 -against-

DELANO GRANT, in his individual capacity, RAYMOND PHILLIPS, in his individual capacity, WALTER LYNCH, in his individual capacity, MANHATTAN APARTMENTS SERVICES, LLC, CITIGROUP INC., and THE CITY OF NEW YORK,

       Defendants.

Demand for Jury Trial
----------------------------------------------------------------X

12-cv-04158 (ILG)(SMG)

**THIRD AMENDED COMPLAINT**

  Plaintiff Alfred Smith, by and through his attorneys LeBow & Associates, PLLC, complains of the Defendants, and each of them, as follows:

## I. PRELIMINARY STATEMENT

  Plaintiff Alfred Smith brings this action under 42 USC §§1983 and 1988 to redress Defendants' violations of the rights and immunities secured to Plaintiff by the United States Constitution. Defendants Grant, Phillips, and Lynch are all New York City police officers, who at all times mentioned herein were acting under color of state law. Plaintiff alleges that (1) Phillips falsely arrested him and maliciously prosecuted him, by wrongly charging him with operating a vehicle without a license, and having marijuana in public view, when Phillips did not have any basis for a reasonable belief that either charge was true, (2) Grant wrongly charged him for a scam committed by a criminal who stole his identity, (3) Manhattan Apartments Services, Citigroup, and Lynch wrongly accused Plaintiff of stealing checks and forging signatures, when they could not have reasonably believed that the checks were stolen and that the signatures were

1

forged, and (4) Citigroup improperly converted funds that belong to him. Plaintiff asserts a claim against the City of New York based upon entity liability, and alleges that the City of New York maintained certain policies, customs, and practices regarding the hiring, training, supervision, and disciplining of police officers that demonstrated a deliberate indifference towards the constitutional rights of Plaintiff and others, and that directly and proximately caused the violation of Plaintiff's Fourth Amendment rights. Plaintiff seeks compensatory damages from Grant, Phillips, Lynch, Manhattan Apartments Services, Citigroup, and the City of New York, and punitive damages from Grant, Phillips, Lynch, Manhattan Apartments Services, and Citigroup.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over the federal civil rights claims asserted herein against Defendants Grant, Phillips, Lynch, Manhattan Apartments Services, Citigroup, and the City of New York pursuant to 28 U.S.C. §§1331 and 1343(a)(3). Venue in this district is proper because a substantial part of the events giving rise to the claims described herein occurred in the Eastern District of New York.

## III. PARTIES

2. At all times relevant herein, Plaintiff Alfred Tyrone Smith was a resident of New York, New York, residing at 601 W 173rd Street, Apt. 51, New York, NY 10032, and a citizen of the United States.

3. At all times relevant herein, Defendant Delano Grant was a police officer employed by the New York City Police Department ("NYPD"), and assigned to the 34th Precinct in the Washington Heights neighborhood of Manhattan.

4. At all times relevant herein, Defendant Raymond Phillips (police ID#: 944895) was a police officer employed by the NYPD, and assigned to the 113rd Precinct in the Jamaica neighborhood of Queens.

5. At all times relevant herein, Defendant Walter Lynch was a police officer employed by the NYPD's Midtown North Detective Squad.

6. At all times relevant herein, Defendant Manhattan Apartments Services was a real estate firm and New York limited liability company with its headquarters and substantial operations in New York, NY.

7. At all times relevant herein, Defendant Citigroup Inc. was a Delaware financial services corporation with both its headquarters and substantial operations in New York, NY, and which runs retail banking operations under the name Citibank.

8. At all times relevant herein, The City of New York was a municipal corporation existing under the laws of the State of New York.  As such, it maintains a police department, and has enacted rules, regulations, and policies as well as maintaining customs and practices concerning the hiring, termination, training, discipline and the conduct of the officers it employs.

## IV. STATEMENT OF FACTS

9. At all times relevant herein, Plaintiff Alfred Tyrone Smith ("Plaintiff") was a resident of New York, New York, residing at 601 W 173rd Street, Apt. 51, New York, NY 10032.

10. At all times relevant herein, Defendant Delano Grant ("Grant") was an NYPD officer assigned to the 34th Precinct.

11. At all times relevant herein, Defendant Raymond Phillips ("Phillips") was an NYPD officer assigned to the 113rd Precinct.

12. At all times relevant herein, Defendant Walter Lynch ("Lynch") was an NYPD officer assigned to the Midtown North Detective Squad.

13. On information and belief, Plaintiff did odd jobs for tenants of Defendant Manhattan Apartments Services, such as helping tenants move or repairing various problems in apartments. Plaintiff would receive checks that were written from the company to those individuals, such as for the return of part of their deposit, and then the individuals would then sign the checks over to him, and he would deposit them in his Citibank account.

14. Prior to October 9, 2010, Plaintiff's identity was stolen by a criminal (the "Criminal"), but he was not aware of the identity theft until December 2010, after which he promptly reported it to the Department of Motor Vehicles.

15. Prior to October 9, 2010, the Criminal took out a cell phone (the "Cell Phone") under the name Alfred Smith and under Plaintiff's date of birth.

16. On or about October 9, 2010, the Criminal presented himself as a real estate agent, and showed an individual apartment 5D at 556 West 188th Street (the "Apartment"), and told the individual that he would need to pay the first month's rent and a $1,000 security deposit in order to rent the Apartment. The individual paid the Criminal $1,300, for which the Criminal gave the individual receipts signed as "Tyrone Smith." The Criminal gave the individual what were claimed to be keys to the Apartment, but that did not open the Apartment's top deadbolt lock. The Criminal gave the Cell Phone as his phone number. The individual never was able to take possession of the Apartment, and never received any return of the money paid.

17. On or about October 19, 2010, the Criminal showed the Apartment to another individual, and that individual also paid the Criminal $750, for which the Criminal gave the individual a receipt signed as "Tyrone Smith." The Criminal gave the Cell Phone as his phone

4

number. That individual never was able to take possession of the Apartment, and never received any return of the money paid.

18. On or about October 20, 2010, the two individuals defrauded by the Criminal went to the police and filed a complaint.

19. At some time after October 20, 2010, the two individuals were shown only one photo, which was of Plaintiff, and wrongly identified him as the Criminal.

20. On or about January 24, 2011 and February 4, 2011, Plaintiff received four checks written from Manhattan Apartments Services to Hamed Dewidar, Daniel Micol, Lior Guzil, and Stacey Thiel (the "MAS Individuals"), all of whom signed their checks over to Plaintiff as payment for work that he did for them, and deposited them in his Citibank account, for a total of $5,950. All of the checks were validly issued and signed by two authorized signatories from Manhattan Apartments Services.

21. On information and belief, at some time after February 4, 2011, Lynch was investigating Plaintiff's alleged theft of the deposits from the two individuals who were shown the Apartment, saw that the four checks from the MAS Individuals were deposited in Plaintiff's Citibank account, and reported them to Manhattan Apartments Services as having been stolen, and the indorsements forged.

22. On information and belief, at some time after February 4, 2011, Manhattan Apartments Services reported the four checks from the MAS Individuals to Citibank as having been stolen and the indorsements forged.

23. At some time after February 4, 2011, Manhattan Apartments Services and Citibank reported Plaintiff to the police and claimed that the four checks were stolen and the indorsements forged.

24. At some time after February 4, 2011, Manhattan Apartments Services and Citibank worked with Lynch to get Plaintiff wrongly blamed for stealing the four checks.

25. On information and belief, at no time did Lynch, Manhattan Apartments Services, or Citibank ever call any of the MAS Individuals to find out whether the checks were legitimately signed over to Plaintiff.

26. On or about August 20, 2011, Plaintiff was in Queens, standing next to his friend's car, while talking to a woman he knew from when he was residing in that neighborhood. Phillips stepped out from the patrol car, approached Plaintiff, and demanded his license and registration. Plaintiff had not owned any vehicle in over 10 years, and his license was suspended. Phillips searched the vehicle, and found a few grams of marijuana inside a closed compartment. Phillips then arrested Plaintiff and the woman, and brought them to the 113th Precinct in Jamaica, Queens. Plaintiff was charged with aggravated unlicensed operation of a motor vehicle in the third degree and criminal possession of marihuana in the fifth degree.

27. On or about August 20, 2011, Plaintiff was brought before a judge, and was told that he would have to pay a fine, but would be released. However, the District Attorney told the judge that Plaintiff had an outstanding warrant, and had the court arrest Plaintiff again. Plaintiff was brought to the 34th Precinct in Washington Heights and waited there for eight hours before being charged and taken to Central Booking. Plaintiff was not informed of the charges and was not aware of any outstanding warrant, and had no idea what he was being charged with.

28. On information and belief, Grant wrote a criminal complaint charging Plaintiff with grand larceny in the fourth degree, blaming Plaintiff for defrauding the two individuals by posing as a real estate agent.

29. On information and belief, Plaintiff was then brought to Central Booking, and asked an officer what he was being charged with. The officer told him that he was being charged with grand larceny.

30. On information and belief, Plaintiff was arraigned on grand larceny in the fourth degree, and his bail was set at $15,000. Unable to afford that bail, he had to remain imprisoned, and he was indicted on that charge on August 26, 2011.

31. On or about September 8, 2011, Plaintiff was about to be released on his own recognizance, when he was arrested again and charged with allegedly stealing the four checks. His bail was set at $75,000, which he could not afford, so he remained in jail.

32. On or about September 9, 2011, Lynch wrote a criminal complaint charging Plaintiff with identity theft in the first degree, grand larceny in the third degree, criminal possession of stolen property in the third degree, and criminal possession of a forged instrument in the second degree, all for allegedly stealing the four checks.

33. On or about September 28, 2011, Plaintiff was released from jail, but all of the charges remained in effect.

34. After September 28, 2011, Plaintiff was repeatedly offered plea deals involving jail time, but refused them, maintaining his innocence.

35. On information and belief, Citibank closed Plaintiff's account, which disrupted his business, and Citibank kept the funds from his account.

36. On or about May 23, 2012, all charges against Plaintiff were dropped.

37. On information and belief, Citibank reimbursed Manhattan Apartments Services for $5,950 for the alleged theft of the four checks.

38. On information and belief, Citibank never attempted to bring any civil proceeding against Plaintiff over the $5,950 that was allegedly stolen from the MAS Individuals.

39. On or about August 2012, Plaintiff contacted Citibank to inform them that the charges were dropped, and asked them to give him access to his account and the funds in his account. Citibank would not give Plaintiff access to the account, kept the account closed, and continues to illegally possess Plaintiff's funds.

## V. FIRST CAUSE OF ACTION - CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS
**(Against Defendants Grant, Phillips, Lynch, Manhattan Apartments Services, and Citigroup)**

40. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 39 of this Complaint with the same force and effect as though fully set forth herein.

41. As a result of the actions of Defendants Grant, Phillips, Lynch, Manhattan Apartments Services, and Citigroup, which began at some time after February 4, 2011, Plaintiff was deprived of his rights under the United States Constitution and federal civil rights law. Plaintiff's rights are secured by provisions of the Fourth Amendment and 42 U.S.C. §1983.

42. The actions of Defendants Grant, Phillips, and Lynch were committed under the color of law and were intentional and willful.  Manhattan Apartments Services and Citigroup intentionally and willfully worked jointly with Lynch to effect the prosecution of Plaintiff.

43. On or about August 20, 2011, Defendant Phillips intended to confine Plaintiff.

44. On or about August 20, 2011, Plaintiff was conscious of being confined.

45. On or about August 20, 2011, Plaintiff at no time consented to being confined by Defendant Phillips, but nonetheless cooperated with him because he was an NYPD officer acting in an official capacity.

46. On or about August 20, 2011, Phillips arrested Plaintiff on charges of aggravated unlicensed operation of a motor vehicle in the third degree, which requires the operation of a motor vehicle with a suspended or revoked license, and criminal possession of marihuana in the fifth degree, which requires the possession of marijuana in public view or the possession of more than 25 grams of marijuana.

47. In view of the fact that Phillips only observed Plaintiff standing outside his friend's car and talking, and had not observed him actually driving with his suspended license, and in view of the fact that Phillips could easily have found out that the car did not belong to Plaintiff and that he did not in fact own a car, Phillips did not have probable cause to arrest Plaintiff for unlicensed operation of a motor vehicle.

48. In view of the fact that the marijuana in Plaintiff's car was in a closed compartment, was not in public view, and was less than 25 grams, Phillips did not have probable cause to arrest Plaintiff for criminal possession of marijuana.

49. In view of the fact that Phillips did not have knowledge sufficient for a reasonable person to believe that Plaintiff had operated a motor vehicle without a license or had criminally possessed marijuana, and had no reason to believe that Plaintiff had committed any other crime, Phillips therefore did not possess knowledge sufficient for a reasonable person to believe that Plaintiff was committing or had committed a crime at the time of his arrest, and therefore Phillips did not have probable cause to arrest and confine Plaintiff.

50. That neither on nor about August 20, 2011, nor at any other relevant time herein, did Phillips possess a warrant for Plaintiff's arrest and confinement.

51. In view of the fact that Phillips intended to confine Plaintiff, Plaintiff was conscious of his confinement, Plaintiff did not consent to his confinement, and the confinement was not

privileged since it was not conducted pursuant to a warrant or probable cause, Plaintiff's confinement was therefore unlawful and actionable under 42 U.S.C. §1983.

52. The actions of Phillips amounted to false arrest and false imprisonment under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

53. As a direct and proximate result of Plaintiff's false arrest and false imprisonment, Plaintiff was caused to suffer imprisonment for 39 days, had to attend court proceedings for nine months, and experienced lost income, the disruption of his business, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

54. On or about August 20, 2011, Phillips charged Plaintiff with aggravated unlicensed operation of a motor vehicle in the third degree, which requires the operation of a motor vehicle with a suspended license, and criminal possession of marihuana in the fifth degree, which requires the possession of marijuana in public view or the possession of more than 25 grams of marijuana.

55. On or about May 23, 2012, the judge dropped all of the charges against Plaintiff.

56. In view of the fact that Phillips only observed Plaintiff standing outside his friend's car and talking, and had not observed him actually driving with his suspended license, and in view of the fact that Phillips could easily have found out that the car did not belong to Plaintiff and that he did not in fact own a car, Phillips did not have probable cause to charge Plaintiff for aggravated unlicensed operation of a motor vehicle in the third degree.

57. In view of the fact that the marijuana in Plaintiff's car was in a closed compartment, was not in public view, and was less than 25 grams, Phillips did not have probable cause to charge Plaintiff for criminal possession of marijuana in the fifth degree.

58. In view of the fact that Phillips did not have knowledge sufficient for a reasonable person to believe that Plaintiff had operated a motor vehicle without a license or had criminally possessed marijuana, he therefore did not possess probable cause to charge Plaintiff with either of the charged crimes.

59. Phillips initiated charges against Plaintiff due to seeking retaliation against Plaintiff, or otherwise other than for the motive of obtaining justice in accordance with the law.

60. Phillips's initiation of criminal proceedings against Plaintiff on the above charges without probable cause and with a motive other than obtaining justice was an act of actual malice against Plaintiff.

61. Plaintiff suffered post-arraignment restrictions on his liberty when he was imprisoned for 39 days and had to attend numerous court hearings for eight additional months before the charges against him were finally dropped.

62. The actions of Phillips amounted to malicious prosecution under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

63. As a direct and proximate result of Plaintiff's malicious prosecution, Plaintiff was caused to suffer imprisonment for 39 days, had to attend court proceedings for nine months, and experienced lost income, the disruption of his business, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

64. On or about August 20, 2011, Grant charged Plaintiff with grand larceny in the fourth degree, which requires the theft of property worth more than $1,000, allegedly for defrauding the two individuals who were shown the Apartment.

65. At some time after February 4, 2011, Manhattan Apartments Services and Citibank reported Plaintiff to the police and claimed that the four checks from the MAS Individuals were stolen.

66. On or about September 9, 2011, acting on Manhattan Apartments Services and Citibank's initiation, Lynch charged Plaintiff with identity theft in the first degree, grand larceny in the third degree, criminal possession of stolen property in the third degree, and criminal possession of a forged instrument in the second degree, all for allegedly stealing the four checks.

67. On or about May 23, 2012, a judge dropped all of the charges against Plaintiff.

68. In view of the fact that the only link between Plaintiff and the defrauding of the two individuals who were shown the Apartment was that they were shown one photo, which was of Plaintiff, and wrongly identified Plaintiff as the Criminal, and that the Criminal gave Plaintiff's name and phone number to the individuals (which was evidence against Plaintiff being the Criminal, since someone committing that crime presumably wouldn't have given his real name and a number registered in his name), Grant did not have probable cause to charge Plaintiff with grand larceny in the fourth degree.

69. Grant initiated charges against Plaintiff due to seeking retaliation against Plaintiff, or otherwise other than for the motive of obtaining justice in accordance with the law.

70. Grant's initiation of criminal proceedings against Plaintiff on the above charge without probable cause and with a motive other than obtaining justice was an act of actual malice against Plaintiff.

71. In view of the fact that responsible personnel of Manhattan Apartments Services and Citibank knew that Plaintiff regularly had checks from Manhattan Apartments Services to tenants signed over to him, they had no reason to believe that the four checks in question were

not signed over to him in a similar manner, and had no evidence that they were stolen or that the signatures were forged, and in view of the fact that Lynch, Manhattan Apartments Services, and Citibank never contacted the MAS Individuals whose checks were allegedly stolen and whose indorsements were allegedly forged, they could not have reasonably concluded that the four checks were stolen or that the signatures were forged, and therefore, Lynch, Manhattan Apartments Services, and Citibank did not have probable cause to initiate charges against Plaintiff for stealing the checks and forging indorsements.

72. Manhattan Apartments Services initiated charges against Plaintiff in order to have him removed from dealing with their tenants, or otherwise other than for the motive of obtaining justice in accordance with the law.

73. Citibank initiated charges against Plaintiff in order to attempt to compel Plaintiff to pay back the funds from the checks, when in fact Plaintiff had legal right to the funds and was not required to do so, as is evidenced by the fact that Citibank never brought civil proceedings against Plaintiff for the return of the funds, or otherwise other than for the motive of obtaining justice in accordance with the law.

74. Lynch initiated charges against Plaintiff due to seeking retaliation against Plaintiff, due to a desire to gain favor with Citibank, or otherwise other than for the motive of obtaining justice in accordance with the law.

75. Manhattan Apartments Services, Citibank, and Lynch's initiation of criminal proceedings against Plaintiff without probable cause and with motives other than obtaining justice was an act of actual malice against Plaintiff.

76. Plaintiff suffered post-arraignment restrictions on his liberty when he was imprisoned for 39 days and had to attend numerous court hearings for eight additional months before the charges against him were finally dropped.

77. The actions of Grant, Lynch, Manhattan Apartments Services, and Citigroup amounted to malicious prosecution under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

78. As a direct and proximate result of Plaintiff's malicious prosecution, Plaintiff was caused to suffer imprisonment for 39 days, had to attend court proceedings for nine months, and experienced lost income, the disruption of his business, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

## VI. SECOND CAUSE OF ACTION - STATE LAW FALSE IMPRISONMENT
**(Against Defendant Phillips)**

79. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 78 of this Complaint with the same force and effect as though fully set forth herein.

80. The actions of Defendant Phillips as set forth in Paragraphs 43 through 51 amounted to false imprisonment under New York State law.

81. As a direct and proximate result of Plaintiff's false arrest and false imprisonment, Plaintiff was caused to suffer imprisonment for 39 days, had to attend court proceedings for nine months, and experienced lost income, the disruption of his business, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

# VII. THIRD CAUSE OF ACTION - STATE LAW MALICIOUS PROSECUTION
### (Against Defendants Grant, Phillips, Lynch, Manhattan Apartments Services, and Citigroup)

82. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 81 of this Complaint with the same force and effect as though fully set forth herein.

83. The actions of Defendant Phillips as set forth in Paragraphs 54 through 60 amounted to malicious prosecution under New York State law.

84. The actions of Defendant Grant as set forth in Paragraphs 64 through 70 amounted to malicious prosecution under New York State law.

85. The actions of Defendant Lynch as set forth in Paragraphs 65 through 75 amounted to malicious prosecution under New York State law.

86. The actions of Defendant Manhattan Apartments Services as set forth in Paragraphs 65 through 75 amounted to malicious prosecution under New York State Law.

87. The actions of Defendant Citigroup as set forth in Paragraphs 65 through 75 amounted to malicious prosecution under New York State Law.

88. As a direct and proximate result of Plaintiff's malicious prosecution, Plaintiff was caused to suffer imprisonment for 39 days, had to attend court proceedings for nine months, and experienced lost income, the disruption of his business, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

## VIII. FOURTH CAUSE OF ACTION-
## CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS
### (Entity liability against Defendant City of New York)

89. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 88 of this Complaint with the same force and effect as though fully set forth herein.

90. On information and belief, responsible officials of the City of New York maintained customs, policies, and practices regarding the supervision and/or training of NYPD officers that led to the deprivations of Plaintiff's Fourth Amendment rights as alleged herein.

91. Responsible officials of Defendant City of New York knew or should have known that if they failed to supervise or train NYPD officers effectively so as to prevent them from violating the constitutional rights of individuals by making unlawful arrests and bringing false charges, the obvious consequence would be that some officers would nonetheless engage in such conduct for various reasons other than to achieve justice in accordance with the law, such as to retaliate against certain individuals, to make arrests and secure prosecutions in order to advance their careers, to gain media attention by arresting high-profile suspects, or to obtain a prosecution when an officer believes that a defendant is guilty but the evidence against that defendant is not sufficient to establish probable cause.

92. In light of the above, responsible officials of Defendant City of New York knew to a moral certainty that NYPD officers would frequently confront situations in which there were powerful incentives to make unlawful arrests or bring false charges.

93. Responsible officials of Defendant City of New York knew that when NYPD officers confront situations in which there were powerful incentives to make unlawful arrests or bring false charges, if those officers are properly supervised and disciplined they would almost always be

deterred from making unlawful arrests or bringing false charges due to the understanding that they would be held liable if they do so, and if those officers were properly trained, they would be fully aware of (A) when it is legal to arrest and charge a suspect, (B) their responsibilities under the law to make only lawful arrests and bring only truthful charges justified by the available evidence, and (C) the consequences they would face for false charges or unlawful arrests.

94. Responsible officials of Defendant City of New York knew that the consequence of NYPD officers making unlawful arrests or bringing false charges would be the deprivation of the constitutional rights of citizens, such as unlawful arrests, malicious prosecutions, and wrongful imprisonment of citizens, thereby violating those citizens' Fourth Amendment rights.

95. In light of fact that the responsible officials of Defendant City of New York knew or should have known that if they failed to supervise the officers of the NYPD effectively so as to prevent them from violating the constitutional rights of individuals by making unlawful arrests and bringing false charges, the obvious consequence would be that some officers would make unlawful arrests and bring false charges for various reasons other than achieving justice in accordance with the law, said officials had a duty to supervise and/or train NYPD officers effectively, and said officials' failure to do so represents a deliberate indifference to the constitutional rights of Plaintiff and other individuals who were unlawfully arrested or falsely charged.

96. As a direct and proximate result of the aforesaid acts of responsible officials of Defendant City of New York, Plaintiff was caused to suffer imprisonment for 39 days, had to attend court proceedings for nine months, and experienced lost income, the disruption of his business, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

97. As a result of the foregoing, Plaintiff sustained the damages previously described, and seeks compensatory damages from the City of New York.

### IX. FIFTH CAUSE OF ACTION-
### STATE LAW CONVERSION
### (Against Defendant Citigroup)

98. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 97 of this Complaint with the same force and effect as though fully set forth herein.

99. On information and belief, Citibank closed Plaintiff's account, which disrupted his business, and Citibank kept the funds from his account.

100. On or about May 23, 2012, all charges against Plaintiff were dropped.

101. On or about August 2012, Plaintiff contacted Citibank to inform them that the charges were dropped, and asked them to give him access to his account and the funds in his account. Citibank would not give Plaintiff access to the account, kept the account closed, and continues to illegally possess Plaintiff's funds.

102. Plaintiff had the right to access his accounts and to possess the funds therein.

103. On information and belief, Citibank never attempted to bring any civil proceeding against Plaintiff over the $5,950 that was allegedly stolen from the MAS Individuals, and has no legitimate claim against Plaintiff's funds.

104. On information and belief, Citibank, intentionally and without authority, assumed and exercised control over Plaintiff's accounts without the rightful authority to do so, interfering with Plaintiff's right of possession, and continued to do so even after being informed that the charges against Plaintiff were dropped.

105. The actions of Citigroup amounted to conversion under New York State Law.

106. As a direct and proximate result of Citigroup's conversion of Plaintiff's accounts and the funds therein, Plaintiff has been unable to run his business, to rent an apartment, or to obtain credit, and those restrictions and the loss of his funds have imposed great hardship on his life.

**WHEREFORE** Plaintiff demands judgment against each of Grant, Phillips, Lynch, Manhattan Apartments Services, and Citigroup in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages on the first, second, third, and fifth causes of action, and against the City of New York in the amount of One Million Dollars ($1,000,000.00) in compensatory damages on the fourth cause of action, together with attorneys' fees, and the costs and disbursements associated with bringing this action.

Dated: New York, New York
      April 8, 2013

Respectfully submitted,

LEBOW & ASSOCIATES, PLLC

   */s/ James B. LeBow*
_____
James B. LeBow, Esq. (JL4535)
570 Lexington Avenue, 16th Floor
New York, New York 10022
Tel. (212) 868-3311
Fax (646) 619-4555